UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Granite Re, Inc.,<br>an Oklahoma corporation,<br><br>      Plaintiff,<br><br>vs.<br><br>City of La Crescent, a Minnesota municipal corporation; MinnComm Utility Construction Co., a Minnesota corporation; Daniel J. Weidner; and Mary D. Weidner,<br><br>      Defendants. | Civil File No.: 08-CV-441 (RHK/RLE)<br><br>**ANSWER AND CROSSCLAIM OF MINNCOMM UTILITY CONSTRUCTION CO., DANIEL J. WEIDNER AND MARY D. WEIDNER** |

MinnComm Utility Construction Co., Daniel J. Weidner; and Mary D. Weidner (collectively "MinnComm") for their Answer to Granite Re, Inc.'s ("Granite Re") Complaint for Declaratory Judgment and Indemnity, states and alleges as follows:

MinnComm denies each and every allegation in Granite Re's Complaint except as expressly admitted or qualified herein.

  1.  Upon information and belief, MinnComm admits the allegations in Paragraph 1 of Granite Re's Complaint.

  2.  Upon information and belief, MinnComm admits the allegations in Paragraph 2 of Granite Re's Complaint.

  3.  MinnComm admits the allegations in Paragraph 3 of Granite Re's Complaint.

  4.  MinnComm admits the allegations in Paragraph 4 of Granite Re's Complaint.

  5.  MinnComm admits the allegations in Paragraph 5 of Granite Re's Complaint.

  6.  MinnComm admits the allegations in Paragraph 6 of Granite Re's Complaint.

7.   With respect to the allegations in Paragraph 7 of Granite Re's Complaint, MinnComm admits that it executed a General Agreement of Indemnity, but states that the General Agreement of Indemnity speaks for itself.

8.   With respect to the allegations in Paragraph 8 of Granite Re's Complaint, MinnComm admits Granite Re provided statutorily required payment and performance bonds, but denies the remaining allegations.

9.   MinnComm admits the allegations in Paragraph 9 of Granite Re's Complaint.

10.   MinnComm admits the allegations in Paragraph 10 of Granite Re's Complaint.

11.   With respect to the allegations in Paragraph 11 of Granite Re's Complaint, MinnComm admits that it was advised that the City of La Crescent passed a resolution to terminate MinnComm's contract and that the City of La Crescent demanded to know whether Granite Re would be taking action under the Bond.   MinnComm denies the remaining allegations in Paragraph 11 of Granite Re's Complaint.

12.   MinnComm admits the allegations in Paragraph 12 of Granite Re's Complaint.

13.   MinnComm admits the allegations in Paragraph 13 of Granite Re's Complaint.

14.   No response is required from MinnComm to Paragraph 14 of Granite Re's Complaint.

15.   MinnComm admits the allegations in Paragraph 15 and affirmatively states that it has complied with Project plans and specifications and was not in default of its contract obligations.

16.   With respect to the allegations in Paragraph 16 of Granite Re's Complaint, MinnComm admits that a justiciable controversy exists but affirmatively denies that it owes any obligations to Granite Re.

17.   The allegations in Paragraph 17 of Granite Re's Complaint are legal conclusions to which no affirmative response is required.

18.   No response is required from MinnComm to Paragraph 18 of Granite Re's Complaint.

19.   The allegations in Paragraph 17 of Granite Re's Complaint are legal conclusions to which no affirmative response is required.  To the extent a response is necessary, Paragraph 19's allegations are denied.

## AFFIRMATIVE DEFENSES

20.   Granite Re's Complaint may fail to state a claim upon which relief can be granted against MinnComm.

21.   Granite Re may be estopped from asserting its claim against MinnComm.

22.   Granite Re's Complaint against MinnComm is barred by the City of La Crescent's material breach of its contract with MinnComm.

23.   Granite Re's Complaint against MinnComm is barred by the City of La Crescent's default pursuant to Paragraph 12.4 of the Performance Bond due to the City's failure to pay MinnComm as required by the Construction Contract.

24.   Granite Re's Complaint against MinnComm may be barred by the City's negligent project design and the doctrines of impossibility, mutual mistake and superior knowledge.

25.   To the extent that Granite Re's claim against MinnComm is barred by one or more affirmative defenses not specifically cited above, such affirmative defenses cannot be determined until MinnComm has an adequate opportunity to complete discovery, and

MinnComm reserves the right to amend its Answer to assert those defenses should discovery or evidence reveal that they are warranted.

## CROSSCLAIM

For its Crossclaim against the City of La Crescent, MinnComm states and alleges as follows:

1.     On or about June 27, 2007, MinnComm and the City of La Crescent entered into an Agreement concerning the Project generally described as "Public Improvements Sanitary Force Main & Water Main for La Crescent, MN and LaCrosse, WI."

2.     Pursuant to Article II of the Agreement, the contract documents which comprise the contract between MinnComm and the City include the Agreement, the Project Manual, plans and drawings, addenda number 1 and any modifications, including change orders.

3.     Pursuant to Article III of the Agreement the contract price for the Project was estimated to be One Million Two Hundred Nineteen Thousand Two Hundred Seventy-Six and 65/100 Dollars ($1,219,276.65) with the contract documents providing the payment schedule.

4.     Pursuant to Section 12 of the General Conditions when the Contractor is delayed, it may apply for an extension of time in writing after a delay occurs and shall state the cause for the delay and the extension requested.

5.     Pursuant to Section 13 of the General Conditions the Contractor shall make no change in the materials used or in the specified manner of constructing and/or installing the improvements or supply additional labor, services or materials beyond that actually required for the execution of the Contract unless a written change order is received from the City.

6.     Pursuant to Section 14 of the General Conditions any discrepancies which may be discovered between the actual conditions and those represented by the Drawings and maps shall

be reported to the City and work shall not proceed except at the Contractor's risk until written instructions are received from the City.

7.      Pursuant to Article 28 of the General Conditions payment to the Contractor shall be approved on a monthly basis by the Common Council and payment shall be made to the Contractor with the exception of 5% retainage until the amount of the payment estimate is 100% complete.

8.      On or about November 20, 2007, the City's project engineer recommended to the City Council that Payment Certificate No. 4 in the amount of $118,177.74 be paid to MinnComm.  Payment Certificate No. 4 included an amount for $39,340.00 for Change Order No. 1 submitted by MinnComm adjusting the total contract amount to $1,258,616.65.

9.      The agreed price and fair and reasonable value of the work provided by MinnComm and presently due and owed by the City is $118,177.74 plus applicable statutory interest.

10.      The City has failed to compensate MinnComm the amounts due and owing pursuant to Payment Certificate No. 4. The City has also failed to compensate MinnComm for additional amounts due and owing MinnComm incurred subsequent to Payment Certificate No. 4.

11.      On or about November 13, 2007 MinnComm notified the City of obstructions that were causing delays in the operations of the Project.  The obstructions were not identified on the plans and drawings provided by the City.  MinnComm requested an extension in contract time.

12.      On or about November 20, 2007, the City denied MinnComm's request for a time extension as to the force main completion date.

13.     On or about November 27, 2007, MinnComm again notified the City that it had encountered unknown underground debris or obstructions which were delaying its operations.

14.     On or about December 20, 2007, MinnComm notified the City, based on its experience, that the site conditions made completion of the project as designed unlikely. MinnComm requested direction and instruction from the City to find a solution to the design due to the site conditions.  The City failed to provide the required written instructions.

15.     On or about December 21, 2007, MinnComm again requested a time extension from the City and reimbursement for all extra costs caused by the site conditions.

16.     Upon information and belief, on or about January 24, 2008, the City sought bids from at least four contractors regarding completion of the Project and informed the contractors that MinnComm's contract for the project had been terminated.

17.     On or about February 4, 2008, the City Council held a special meeting to discuss the water treatment project.  At that meeting the City Council adopted a resolution declaring MinnComm in default and terminating the Contract.

18.     On or about February 5, 2008, the City notified MinnComm that the Contract was terminated and that it had solicited bids from four (4) other contractors for Project completion prior to MinnComm's contract termination.

19.     Upon information and belief, the City changed the Project design or allowed the new contractor to change the design after February 4, 2008 to allow the new contractor to avoid the debris and obstructions complained of by MinnComm in 2007.

## COUNT ONE
## BREACH OF CONTRACT

20.     MinnComm realleges and incorporates by reference the allegations contained in the preceding paragraphs.

21.     The City entered into the Contract with MinnComm whereby MinnComm agreed to furnish all of the materials and perform all of the work shown on the plans and drawings as described in the Contract Documents which resulted in improvements to the Property.  Plaintiff has satisfied and fulfilled its contractual obligations to the City as they relate to Payment Certificate No. 4 and other work and materials provided to the Project.

22.     MinnComm further notified the City of changes in the work and requested time extensions for the work to be performed and extra payments for that additional work performed under the Contract.

23.     MinnComm further requested written instructions from the City regarding the obstructions and debris it was encountering in the project.

24.     The City breached the Contract with MinnComm by not compensating MinnComm for the materials and labor furnished by MinnComm and approved by the City's project engineer.  The City further breached the Contract by failing to grant extensions, by failing to provide written instructions regarding problems encountered by MinnComm on the Project, and failing to compensate MinnComm for additional costs incurred on the Project.

25.     As a direct and proximate result of the City's breaches of contract, MinnComm has been damaged in the principal amount in excess of $75,000, plus applicable interest, costs, disbursements, and attorneys' fees.

26.     MinnComm is entitled to judgment against the City for an amount in excess of $75,000, the exact amount to be proven at trial, plus applicable interest, costs, disbursements and attorneys' fees.

## COUNT TWO
## QUANTUM MERUIT

27.     MinnComm realleges and incorporates by reference the allegations contained in the preceding paragraphs.

28.     MinnComm furnished valuable labor and materials at the request of and with the knowledge of the City.

29.     The City has not compensated MinnComm for the labor and materials furnished by MinnComm.

30.     The City received a benefit from the labor and materials provided by MinnComm thereby becoming unjustly enriched and liable to MinnComm in quantum meruit for the fair and reasonable amount in excess of $75,000, the exact amount to be proven at trial, plus applicable interest.

31.     MinnComm is entitled to judgment against the City for an amount in excess of $75,000, the exact amount to be proven at trial, plus applicable interest, costs, disbursements and attorneys' fees.

## COUNT THREE
## VIOLATION MINN. STAT. § 471.425

32.     MinnComm realleges and incorporates by reference the allegations contained in the preceding paragraphs.

33.     The City is a municipality as defined in Minn. Stat. § 471.425, subd. 1(d) requiring it to pay vendor obligations pursuant to standard payment periods.

34.     The City conducts regularly scheduled meetings at least once a month.

35.     MinnComm provided the City with payment requests pursuant to the Contract which were approved for payment by the City.  The City failed to pay MinnComm within 35 days of receipt of MinnComm's payment request in violation of Minn. Stat. § 471.425.

36.     As a direct and proximate result of the City's violation of Minn. Stat. § 471.425, MinnComm has been damaged in the principal amount in excess of $75,000, plus applicable interest, costs, disbursements, and attorneys' fees.

37.     MinnComm is entitled to judgment against the City for an amount in excess of $75,000, the exact amount to be proven at trial, plus applicable interest, costs, disbursements and attorneys' fees.

**COUNT FOUR**
**BREACH OF IMPLIED WARRANTY**

38.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

39.     The City knew or had reason to know that MinnComm would rely on the plans and specifications for bidding on the Project.

40.     MinnComm relied on the City's plans and specifications when bidding the Project and in undertaking its work related to the Contract and its reliance was reasonable.

41.     The City breached its implied warranty of the adequacy of the plans and specifications when it failed, among other things, to identify debris and obstructions at the site.

42.     As a direct and proximate result of the City's breach, MinnComm has been damaged in the principal amount in excess of $75,000, plus applicable interest, costs, disbursements, and attorneys' fees, the exact amount to be proven at trial.

43. MinnComm is entitled to judgment against the City for an amount in excess of $75,000, the exact amount to be proven at trial, plus applicable interest, costs, disbursements and attorneys' fees.

## COUNT FIVE
## DEFAMATION –BUSINESS ORGANIZATION

44. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

45. On or about February 4, 2008, the City held a public meeting at which it adopted a resolution declaring MinnComm in default of the Contract and terminating MinnComm.

46. The City's public resolution declaring MinnComm in default was a wrongful and bad faith termination of the Contract without cause.

47. As a direct and proximate cause of the City's defamatory statement, MinnComm has, among other things, suffered a loss of business reputation and loss of bonding capacity for its operations.

48. MinnComm is entitled to judgment against the City for an amount in excess of $75,000, the exact amount to be proven at trial, plus applicable interest, costs, disbursements and attorneys' fees.

**WHEREFORE,** MinnComm Utility Construction Co. requests judgment of the Court against the City as follows:

1. Judgment in favor of MinnComm and against the City of La Crescent on all Counts of its Crossclaim for an amount in excess of $75,000, plus applicable interest, costs, disbursements, and attorneys' fees, the exact amount to be proven at trial.

2.      Awarding any other relief that the Court may deem just and equitable.


Dated:  April 1, 2008                        **FABYANSKE, WESTRA, HART &**
                                             **THOMSON, P.A.**

                               By:    s/M.T. Fabyanske
                                      M.T. Fabyanske (#28022)
                                      Thomas A. Forker (#246682)
                                      800 La Salle Avenue, Suite 1900
                                      Minneapolis, MN 55402
                                      (612) 359-7600 (P)
                                      (612) 359-7602 (F)

                                      **ATTORNEYS FOR DEFENDANTS**
                                      **MINNCOMM UTILITY**
                                      **CONSTRUCTION CO., DANIEL J.**
                                      **WEIDNER, AND MARY D. WEIDNER**